UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALFRED LAM, et al.,

        Plaintiffs,

    v.

THE CITY & COUNTY OF SAN FRANCISCO, et al.,

        Defendants.

Case No. 10-cv-4641-PJH

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

    Defendants' motion for summary judgment came on for hearing before this court on January 13, 2016. Plaintiff Alfred Lam appeared in pro per, and plaintiff Paula Leiato appeared through counsel Albert Boasberg. Defendants appeared through their counsel, Boris Reznikov. Having read the papers filed in conjunction with the motion and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

    This is the second suit brought by this group of plaintiffs for alleged workplace discrimination. Plaintiffs Alfred Lam and Paula Leiato ("plaintiffs") are employed by San Francisco's Juvenile Probation Department ("JPD"), and bring suit against the City and County of San Francisco ("CCSF") and various individual defendants[1] (referred to collectively as "defendants") for alleged violations of section 1983, section 1981, Title VII,

---

[1] The individual defendants are Timothy Diestel, Dennis Doyle, Charles Lewis, Toni Ratcliff-Powell, John Radogno, Tamara Ratcliff, Mildred Singh, Robert Taylor, and Barry Young.

1    and the California Fair Employment and Housing Act ("FEHA").  Plaintiffs identify as

2    Asian Pacific Americans ("APAs"), and argue that they were discriminated against,

3    especially as compared to African American employees.

4        In October 2008, the same plaintiffs[2] filed a case very similar to the one that is

5    now before the court.  See Lam et al. v. City and County of San Francisco, C 08-4702

6    PJH ("Lam I").  In Lam I, the plaintiffs filed suit against CCSF and ten individual

7    employees (many of whom are also defendants in this case) for alleged violations of

8    section 1983, section 1981, Title VII, and FEHA.  Plaintiffs' allegations centered around

9    alleged racial discrimination, harassment, and retaliation by their superiors at JPD.  Some

10   of the Lam I claims were dismissed on a Rule 12(b)(6) motion, and summary judgment

11   was granted as to the remaining claims in April 2012.

12       While Lam I was pending, the plaintiffs filed the present suit ("Lam II").

13   Specifically, in October 2010, plaintiffs filed suit alleging the same causes of action as in

14   Lam I (alleged violations of §§ 1981 and 1983, Title VII, and FEHA) against CCSF and

15   individual employees.  While the causes of action are nearly identical as those in Lam I,

16   the plaintiffs framed Lam II as focused on discrimination in the promotion of employees to

17   "acting supervisor" positions, as opposed to Lam I's focus on discrimination with respect

18   to disciplinary decisions.  See Dkt. 61 at 17 (hearing transcript where plaintiffs' counsel

19   stated that "We don't want to re-litigate an issue.  We don't want a second bite at the

20   apple.  What we want to do is to be able to present the evidence that we have concerning

21   promotional manipulation for the purposes of denying promotions.").

22       In June 2011, eight months after the filing of Lam II, the plaintiffs sought to file a

23   supplemental complaint in Lam I, claiming that supplementation would capture the

24   allegations made by Lam II, such that Lam II could be dismissed if the motion to

25   supplement was granted.  The court denied the motion to supplement, finding that the

26   plaintiffs had not been diligent in seeking leave to supplement, and that supplementation

27   _____

28   [2] In addition to plaintiffs Lam and Leiato, this suit was originally filed by plaintiffs Gregory
     Chin and Frank Chen.  Plaintiffs Chin and Chen have since been dismissed from this suit.

United States District Court
Northern District of California

would unduly delay the close of discovery in <u>Lam I</u>.  The plaintiffs then sought to consolidate <u>Lam I</u> and <u>Lam II</u> only two days before discovery was set to close in <u>Lam I</u>.  The court denied the motion to consolidate, viewing the consolidation attempt as "as a means of achieving what plaintiffs could not achieve by way of their motion to supplement."  <u>Lam I</u>, Dkt. 182.

As mentioned above, summary judgment was ultimately granted in <u>Lam I</u>, and after that, defendants sought to dismiss this case based on the res judicata effect of <u>Lam I</u>.  The court granted the motion only in part, finding that any allegations that preceded the filing of the last operative complaint in <u>Lam I</u> (February 22, 2010) were barred, as they either were raised or could have been raised in <u>Lam I</u>.  The court further found that one post-February 2010 allegation (a denial of a request for leave made by plaintiff Leiato in July 2010) was also litigated in <u>Lam I</u>, and thus was barred.

Accordingly, the remaining allegations in this case are limited to alleged conduct that occurred after February 22, 2010, minus the July 2010 denial of plaintiff Leiato's request for leave.  Looking only at that time period, the operative third amended complaint ("TAC") alleges the following with respect to plaintiff Lam:

(1) In or around March 2010, plaintiff Lam alleges that he "requested vacation time in a timely manner," but the request was "ignored and delayed without justification" until it was "finally approved in July 2011, just several days before the planned vacation" (TAC, ¶ 39),

(2) In or around March 2010, plaintiff Lam alleges that he was "denied promotion or opportunity for promotion" (TAC, ¶ 40),

(3) On or about July 27, 2010, plaintiff Lam alleges that he was given "a 'poor' or 'negative' work appraisal on his annual performance evaluation without justification" (TAC, ¶ 41),

(4) On or about September 29, 2010, plaintiff Lam alleges that he was given a "written notice of 'inattention to duty' without merit or justification" (TAC, ¶ 42),

(5) On or about November 9, 2010, plaintiff Lam alleges that he left his workstation

United States District Court
Northern District of California

due to the "strong odor of sewage," yet was "issued a written reprimand" for "alleged tardiness that day in reporting to his assigned post" (TAC, ¶ 43),

(6) On or around January 2011, plaintiff Lam alleges that he "submitted a medical advisory to JPD recommending modified duty due to persistent eye irritation," yet was "arbitrarily denied accommodation," and was instead "refused work" and "sent home without cause or justification" between January 15, 2011 and January 23, 2011" (TAC, ¶ 44-45),

(7) On or about January 27, 2011, plaintiff Lam alleges that he was "denied participation in a scheduled annual shift bidding process without justification or cause (TAC, ¶ 46),

(8) On or about May 14, 2011, plaintiff Lam alleges that he was "given a written reprimand and placed on 'sick leave restriction' without justification and merit" (TAC, ¶ 47), and

(9) On or around December 15, 2011, plaintiff Lam alleges that he expressed interest in an acting supervisor position, but did not receive one.  TAC, pp 52. Plaintiff also generally alleges that "throughout his career at the JPD, Lam repeatedly and continually asked to be assigned to acting supervisory positions," but "never received such an assignment or appointment."  TAC, ¶ 48.

With respect to plaintiff Leiato, the TAC makes the following allegations post February 22, 2010 (excepting the July 2010 allegations mentioned above):

(1) On or around March 2010, plaintiff Leiato alleges that she was "denied promotion despite nearly fifteen years of experience" (TAC, ¶ 67),

(2) On or around November 2010, plaintiff Leiato alleges that she "submitted competent medical certification to request leave for a doctor's appointment," but was "arbitrarily denied leave and pay and thereafter charged with 'misuse of sick time' and being AWOL for her November 24, 2010 medical appointment that she notified her superiors of" (TAC, ¶ 70),

4

(3) During some unspecified time period, plaintiff Leiato alleges that she has
"routinely been assigned to work with two on-call staff," which "makes it harder
to perform her job responsibilities, prolonging the time it takes and putting her
in danger" (TAC, ¶ 71),

(4) Throughout her career, including in March 2010, September 2011, October
2011, December 2011, January 2012, and February 2012, plaintiff Leiato
alleges that she "continually asked to be assigned to acting supervisory
positions," but "never received such an assignment or appointment" (TAC,
¶¶ 72-80).

Although it does not appear in the TAC, defendants' motion references an additional allegation by Leiato - namely, that in March 2011, she "served a three-day suspension for abandoning her post on July 20, 2010." Dkt. 178 at 12. Because this allegation arises out of the July 2010 denial of leave, and because allegations relating to the July 2010 denial of leave are barred from this action under res judicata principles, the court finds that any allegations relating to the March 2011 suspension are similarly barred under principles of res judicata. Moreover, as mentioned above, no allegations regarding a March 2011 suspension appear in the operative complaint.

Based on the above allegations, plaintiffs assert six causes of action: (1) violation of the equal protection clause of the Fourteenth Amendment under 42 U.S.C. § 1983, against defendant CCSF, (2) violation of 42 U.S.C. § 1981 based on disparate treatment due to race and national origin, asserted against all defendants, (3) violation of Title VII based on disparate treatment due to race and national origin, asserted against CCSF, (4) violation of Title VII based on harassment and a hostile work environment due to race and national origin, asserted against CCSF, (5) violation of Title VII based on retaliation, asserted against CCSF, and (6) violation of Cal. Gov't Code § 12940 based on failure to prevent unlawful discrimination and harassment, asserted against CCSF.

Defendants now move for summary judgment as to all claims.

5

1

**DISCUSSION**

2   A.      Legal Standard

3          A party may move for summary judgment on a "claim or defense" or "part of . . . a

4   claim or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there

5   is no genuine dispute as to any material fact and the moving party is entitled to judgment

6   as a matter of law.  Id.

7          A party seeking summary judgment bears the initial burden of informing the court

8   of the basis for its motion, and of identifying those portions of the pleadings and discovery

9   responses that demonstrate the absence of a genuine issue of material fact.  Celotex

10  Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Material facts are those that might affect the

11  outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

12  dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

13  jury to return a verdict for the nonmoving party.  Id.

14         Where the moving party will have the burden of proof at trial, it must affirmatively

15  demonstrate that no reasonable trier of fact could find other than for the moving party.

16  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  On an issue

17  where the nonmoving party will bear the burden of proof at trial, the moving party may

18  carry its initial burden of production by submitting admissible "evidence negating an

19  essential element of the nonmoving party's case," or by showing, "after suitable

20  discovery," that the "nonmoving party does not have enough evidence of an essential

21  element of its claim or defense to carry its ultimate burden of persuasion at trial."  Nissan

22  Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1105-06 (9th Cir. 2000);

23  see also Celotex, 477 U.S. at 324-25 (moving party can prevail merely by pointing out to

24  the district court that there is an absence of evidence to support the nonmoving party's

25  case).

26         When the moving party has carried its burden, the nonmoving party must respond

27  with specific facts, supported by admissible evidence, showing a genuine issue for trial.

28  Fed. R. Civ. P. 56(c), (e).  But allegedly disputed facts must be material – the existence

United States District Court
Northern District of California

1    of only "some alleged factual dispute between the parties will not defeat an otherwise

2    properly supported motion for summary judgment." Anderson, 477 U.S. at 247-48.

3         When deciding a summary judgment motion, a court must view the evidence in the

4    light most favorable to the nonmoving party and draw all justifiable inferences in its favor.

5    Id. at 255; Hunt v. City of Los Angeles, 638 F.3d 703, 709 (9th Cir. 2011).

6    B.    Legal Analysis

7         As an initial matter, defendants argue that plaintiffs' failure to meet the

8    administrative exhaustion requirement warrants summary judgment as to a number of

9    their claims.  Defendants point to plaintiff Lam's October 2010 charge, in which he

10   mentioned only the alleged denial of a promotion, and not any alleged retaliation or

11   harassment.  Defendants also point to plaintiff Leiato's 2010 charge in which she alleged

12   discrimination and retaliation based on an incident occurring in 2007.  However,

13   defendants fail to acknowledge a key aspect of this case – the fact that Lam I was

14   already pending at the time of all of the alleged conduct, and that plaintiffs originally

15   sought to supplement the Lam I complaint with the allegations that are now at issue in

16   this case.  In Lam I, the court denied the motion to supplement as untimely, but it appears

17   undisputed that, if the motion had been timely brought, plaintiffs would have been

18   permitted to supplement the Lam I complaint without needing to file a new administrative

19   charge.  When the motion to supplement was denied, it was unclear whether plaintiffs

20   were then required to file a new administrative charge.  While exhaustion may indeed

21   have been required, defendants have not provided authority for imposing such a

22   requirement in a situation such as this.  And, as the party seeking summary judgment, it

23   is defendants' burden to make such a showing.  Having failed to do so, the court is left

24   with no basis to impose an exhaustion requirement for conduct that occurred during the

25   pendency of Lam I.  The court will instead address plaintiffs' claims on the merits.

26        The bulk of the parties' briefs relates to the third cause of action, for disparate

27   treatment based on race and national origin under Title VII.  To establish a prima facie

28   case of disparate treatment discrimination under Title VII, plaintiff must show (1) that

United States District Court
Northern District of California

United States District Court
Northern District of California

he/she belongs to a protected class, (2) was performing according to his/her employer's legitimate expectations, (3) suffered an adverse employment action, and (4) that other employees with qualifications similar to his/her own were treated more favorably, or that the employer had a discriminatory motive. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317 (2000). This is only a minimal evidentiary burden, and a plaintiff need only give rise to an inference of unlawful discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Second, if the employee produces sufficient evidence to establish a prima facie case, the burden shifts to the employer-defendant to articulate a "legitimate non-discriminatory reason" for the adverse employment action. See Lyons v. England, 307 F.3d 1092, 1112 (9th Cir. 2002). Finally, if the employer is able to articulate a legitimate, non-discriminatory reason for its action, this dispels the inference of discrimination raised by plaintiff's prima facie case, leaving the employee with the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the employee. A plaintiff employee may satisfy this burden by proving that the legitimate reasons offered by defendant were factually untrue, thereby creating an inference that those reasons were merely a pretext for discrimination. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000).

The primary allegation of plaintiff Lam is that he was "denied promotion or opportunity for promotion, likely due to his race, national origin, and previous complaints against CCSF and JPD." TAC, ¶ 40. Plaintiff Lam alleges that this denial of promotion occurred in March 2010, though he separately alleges that he was also denied appointment to "acting" supervisory positions throughout his career at JPD. See, e.g., TAC, ¶¶ 48-52. Plaintiff Lam alleges that "[a]ssignment to these 'acting' positions is used by defendants as a de-facto requirement to receive a full time, permanent supervisory position." Id., ¶ 48. However, most of plaintiff Lam's allegations regarding an acting position arise out of conduct that occurred before February 2010, and thus are barred by res judicata. The only post-February 2010 allegation is that "[o]n or around December

1   15, 2011, Lam informed supervisor Alardo that he was interested in an 8318 or 8322

2   acting position," but "never received such an assignment or appointment, instead

3   plaintiff's non-APA counterparts received the additional pay and opportunities for

4   promotion requested by plaintiff." Id., ¶ 52.

5           In its motion, defendant CCSF argues that the March 2010 promotions were made

6   based on responses to a job announcement that was posted in September 2009.  Dkt.

7   178 at 3.  Applicants were invited to take a job-related examination, and those whose

8   scores made them eligible were placed on a list from which promotions were made.

9   Defendant CCSF emphasizes that plaintiff Lam did not apply for this set of promotions,

10  and was thus ineligible.

11          In his opposition, plaintiff Lam appears not to challenge the fact that he did not

12  apply for a promotion, but he argues that "it was generally known throughout the

13  Department that Lam and Leiato did inquire several times about being considered for any

14  promotions," and that "neither plaintiff ever was made apprised of the process and no one

15  was willing to guide them through whatever corporate 'hoops' the plaintiffs had to jump

16  through to be considered for promotion."  Dkt. 182 at 8.

17          Even if plaintiff Lam is correct that his supervisors did not help him apply for a

18  promotion, the fact remains that he did not apply, and thus was ineligible for a promotion

19  in March 2010.  This fact alone precludes plaintiff Lam from establishing a prima facie

20  case of discrimination as to the March 2010 promotion.  See, e.g., Ratti v. City and

21  County of San Francisco, 1992 WL 281386 (N.D. Cal. 1992) ("[A]pplication to the positon

22  is a necessary element of raising a claim for discrimination by disparate treatment.").  For

23  that reason, plaintiff Lam has not shown that he suffered an adverse action by not

24  receiving a promotion in March 2010.  Moreover, plaintiff Lam has not shown that

25  defendant acted with a discriminatory motive, or that other similarly situated employees

26  were treated more favorably.  For those reasons, the court finds that any alleged denial of

27  promotion in March 2010 is not actionable as part of plaintiff Lam's Title VII discrimination

28  claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1       However, aside from the alleged denial of promotion in March 2010, plaintiff Lam

2   also alleges that he was denied an acting supervisory position in December 2011.  There

3   is no evidence that acting supervisory positions were subject to the same application and

4   examination process as were permanent promotions, so the fact that plaintiff Lam did not

5   formally apply for an acting supervisory position is not relevant.  CCSF argues that Lam

6   "never asked Director Powell for an appointment," but Lam does allege that he asked his

7   supervisor (Alardo) for an appointment, and given the apparent lack of any formal

8   procedure for requesting acting supervisory appointments, the court has no basis to draw

9   a significant distinction between Lam asking his direct supervisor and asking the JPD

10  director.  In the absence of any other evidence regarding the procedure for receiving an

11  acting supervisory appointment, the court finds that plaintiff Lam has raised at least a

12  triable issue as to whether he suffered an adverse action when he was denied an

13  appointment to an acting supervisory position.

14      However, in order to establish a prima facie case of discrimination, plaintiff Lam

15  must also present evidence that other employees with qualifications similar to his own

16  were treated more favorably, or that the employer had a discriminatory motive.  In the

17  complaint, plaintiff Lam does allege that plaintiff's "non-APA counterparts received the

18  additional pay and opportunities for promotion requested by plaintiff," but at this stage of

19  the case, more than mere allegations are required.  Plaintiff Lam must provide evidence

20  showing that similarly situated non-APA employees were in fact treated more favorably.

21      In his opposition brief, plaintiff Lam provides more specifics than he did in the

22  complaint, arguing that "[i]n June 2013, at least ten (10) of 'permanent position' of

23  counselor #8320 were appointed or promoted, the majority of which were African

24  Americans," and that "[i]n December 2014, four (4) of the only 'acting supervisors' or

25  'special assignment positions' all African Americans . . . were promoted to 'permanent

26  supervisor position.'"  Dkt. 182 at 3.  However, these allegations relate only to the

27  promotion to permanent positions, not to the appointment to acting positions.  Thus, even

28  if these allegations were supported with evidence, they would not be relevant to plaintiff

United States District Court
Northern District of California

1  Lam's claim that the failure to appoint him to an acting position constituted discrimination.

2      Not only does plaintiff Lam fail to provide evidence of non-APAs being appointed

3  to acting positions, but defendant CCSF actually presents evidence that two of the

4  employees appointed to acting positions during the relevant time period were in fact

5  Asian American (Dennis Woo and Scott Kato).  See Dkt. 187-1, Ex. C at 238:11-19,

6  247:11-13; see also Dkt. 178-5, ¶ 25.

7      Based on plaintiff's lack of evidence that defendant CCSF acted with a

8  discriminatory motive in failing to appoint him to an acting supervisory position or other

9  evidence that similarly situated employees were treated more favorably, and based on

10  CCSF's evidence that two Asian-American employees were appointed to acting

11  positions, the court finds that plaintiff Lam has not established a prima facie case of

12  discrimination as to the failure to appoint him to an acting supervisory position in

13  December 2011.

14      However, even if plaintiff Lam were able to establish a prima facie case, defendant

15  CCSF has presented a legitimate, non-discriminatory reason for any alleged adverse

16  action – namely, that more qualified candidates would have been appointed over plaintiff

17  Lam.  See Dkt. 178-5, ¶¶ 24-26.  The JPD director stated in a declaration that, even if

18  plaintiff Lam had asked her for an appointment to an acting position, she would not have

19  appointed him because of "performance issues" such as his "propensity to agitate the

20  youth detainees, for example, by having inappropriate conversations with them," the fact

21  that he "did not have the respect of his peers," the fact that he "demonstrated poor

22  judgment with respect to decisions that had safety implications," and that he "repeatedly

23  failed to adhere to department protocols."  Id., ¶ 26.

24      In the opposition brief, plaintiff Lam responds by arguing that his "performance

25  was very good and he exhibited qualities and work ethics that many other similarly

26  situated employees did not exhibit."  Dkt. 182 at 11.  Plaintiff Lam further argues that

27  "CCSF's 'blanket' statement that there were more qualified candidates is quite nebulous

28  because they fail to indicate whom is more qualified."  Id.

United States District Court
Northern District of California

1    The court agrees that, if CCSF had merely stated that there were more qualified

2    candidates, that would be too "nebulous" to constitute a legitimate, non-discriminatory

3    reason.  However, CCSF provided a declaration setting forth specific performance

4    issues, and plaintiff Lam does not provide evidence showing that the stated performance

5    issues were not factually accurate, or that they were offered as a pretext for

6    discrimination.

7    For all of the above reasons, the court finds that any alleged denial of appointment

8    of plaintiff Lam to an acting supervisory positon in December 2011 is not actionable as

9    part of plaintiff Lam's Title VII discrimination claim.

10    The second adverse action alleged by plaintiff Lam is that, in March 2010, he

11    "requested vacation time in a timely manner," but the request was "ignored and delayed

12    without justification."  TAC, ¶ 39.  While plaintiff Lam admits that the request was "finally

13    approved in July 2011," he argues that the approval occurred just a few days before his

14    planned vacation, resulting in "unnecessary financial burden and changes of itinerary with

15    family members."  Id.

16    Defendant CCSF argues that, because plaintiff Lam's vacation request was

17    ultimately approved, it cannot constitute an "adverse action."  Defendant argues that an

18    adverse action must be a "materially adverse change in terms or conditions of

19    employment because of an employer's actions," and "must be more than a mere

20    inconvenience."  Dkt. 178 at 15 (citing Nguyen v. Superior Court, 2015 WL 3322088

21    (N.D. Cal. Jan. 23, 2015)) (emphasis added by defendant).  Defendant CCSF argues that

22    any impact on plaintiff Lam was personal, not professional, as shown by his own

23    allegations in the TAC.

24    In his opposition, plaintiff Lam concedes that his request was ultimately approved,

25    but argues that the delay caused "aggravation and stress" to Lam, and that it "likely

26    affected Lam's position and standing as an employee" and that Lam was "probably then

27    exposed to very negative light surrounding his employment situation which only made

28    Lam to be left out of other benefits of employment like promotions, overtime

United States District Court
Northern District of California

opportunities, better work site choices, etc."  Dkt. 182 at 9.

The court finds that plaintiff Lam has not presented sufficient evidence that the delayed approval of his vacation request affected his employment, as opposed to affecting him as an individual.  Plaintiff's opposition relies on speculation that the delay "likely affected" his standing as an employee.  And to the extent that plaintiff Lam alleges that he was "left out of other benefits of employment like promotions, overtime opportunities, better work site choices, etc.," those alleged adverse actions may be independently actionable, but they do not suffice to show that the delayed vacation approval was itself an adverse action.

Moreover, the court also finds that plaintiff Lam has not presented sufficient evidence to create a triable issue of fact as to whether the delayed approval of his vacation request was based on defendant's discriminatory motive, or evidence that other similarly situated employees were treated more favorably.  Plaintiff Lam does not allege (let alone provide evidence) that any other employee's vacation request was approved despite an outstanding training requirement, nor does he provide evidence that the individual(s) responsible for delaying his vacation request were motivated by an intent to discriminate.

However, even if plaintiff Lam were able to establish a prima facie case of discrimination, defendant CCSF has presented evidence of a legitimate non-discriminatory reason for the alleged adverse action.  Specifically, CCSF argues that it had a policy requiring employees to complete all required training before any vacation request could be approved, and at the time of plaintiff Lam's vacation request, he had just bid into an assignment in the Admissions Office, which required additional training.  Dkt. 178-5, ¶¶ 4-8.

This evidence of CCSF's training policy shifts the burden back to plaintiff Lam to show that the "legitimate reasons offered by defendant were factually untrue, thereby creating an inference that those reasons were merely a pretext for discrimination." Plaintiff Lam has not presented any such evidence.  While he does argue that his

United States District Court
Northern District of California

1   vacation request was used "as a bargaining chip or tool to make Lam better conform to

2   [defendants'] corporate culture," he does not argue that the policy evidence is factually

3   untrue, nor does he present any other evidence showing that the stated reason was

4   pretextual.

5        For all of the above reasons, the court finds that the March 2010 delayed vacation

6   approval is not actionable as part of plaintiff Lam's Title VII discrimination claim.

7        The third adverse action alleged by plaintiff Lam is his July 2010 performance

8   review, which he describes as "poor" and "negative." TAC, ¶ 41. Along with its motion,

9   defendant CCSF submitted a copy of the review itself, which shows that plaintiff Lam was

10  graded on a point scale of 1 to 9 – with 1 to 3 meaning "did not meet expectations," 4 to 6

11  meaning "met expectations," and 7 to 9 meaning "exceeded expectations." See Dkt.

12  178-5, Ex. 4. The review shows that plaintiff received a "met expectations" rating of 4.

13  Id.

14       Defendant CCSF argues that the review was not actually negative, and points to

15  plaintiff Lam's own deposition testimony stating that the review was "okay." Dkt. 178-1,

16  Ex. A at 147:7-12. CCSF further argues that, even if the review were objectively

17  negative, it would not constitute an adverse action because negative job reviews are not

18  considered adverse actions unless there are immediate consequences to the terms and

19  conditions of one's employment.

20       As a general matter, the court finds that defendant overreaches when it argues

21  that an average (or slightly below average) performance review cannot constitute an

22  adverse action. Even though plaintiff Lam's performance review was not wholly negative,

23  it still could constitute an adverse action if it were undeservedly low. Lam alleges that his

24  work performance was actually "better than satisfactory," and if he had presented

25  evidence to support that assertion, he could have created a triable issue of fact as to

26  whether the review was an adverse action. However, plaintiff Lam has not presented

27  such evidence, and the court thus finds no triable issue of fact on that issue.

28       Moreover, even putting aside the adverse action issue, plaintiff has also failed to

United States District Court
Northern District of California

1  raise a triable issue regarding another element of his prima facie case – whether other

2  employees with qualifications and work performance similar to his own were treated more

3  favorably, or that the employer had a discriminatory motive.  While plaintiff Lam asserts

4  that "many employees out of Lam's protected class received better performance

5  evaluations for doing much less work in both quantity and quality," he does not provide

6  evidence to support that assertion.  Accordingly, the court finds that plaintiff Lam has

7  failed to adequately establish a prima facie case of discrimination as to the July 2010

8  performance review.

9       The fourth adverse action alleged by plaintiff Lam is the "inattention to duty" notice

10  issued in September 2010.  The complaint contains very few facts regarding this incident,

11  alleging only that "[o]n or about September 29, 2010, CCSF/JPD employees Lewis and

12  Powell issued Lam a written notice of 'inattention to duty' without merit or justification."

13  TAC, ¶ 42.

14       In its motion, defendant CCSF argues that "there are no Department records

15  indicating that Lam received <u>any</u> type of notice on or about this date for this reason."  Dkt.

16  178 at 6.  CCSF also explains that JPD uses three types of notices to manage employee

17  performance:  (1) letters of counseling, (2) records of discussion, and (3) admonishments

18  or written reprimands.  According to CCSF, only the third type of notice is considered

19  disciplinary, as the first two are "written reminders" that are "aimed at improving

20  performance," and records of those two types of notices are generally not maintained.

21       In his opposition brief, plaintiff Lam notes the lack of records, and argues that

22  CCSF either "has very poor record keeping procedures or CCSF intentionally destroyed

23  the evidence to make Lam's case less significant."  Dkt. 182 at 9-10.  Plaintiff Lam further

24  suggests that "the latter is more likely where the document was destroyed along with all

25  references to it in correspondence and emails."  <u>Id</u>. at 10.

26       However, plaintiff Lam provides no support for his suggestion that defendant

27  CCSF destroyed relevant evidence, nor does he provide testimony from any other

28  employee who witnessed the alleged incident.  In fact, even plaintiff Lam's own

1   recollection of the event appears to be hazy.  In his deposition, he was asked "Do you

2   recall what this allegation is about?" and answered "I'm not sure.  It was very minor.

3   There is no basis to that."  Dkt. 178-1, Ex. A at 177:11-13.

4          Based on the lack of clear allegations – let alone evidence – relating to the alleged

5   "inattention to duty" notice issued in September 2010, the court finds that plaintiff Lam

6   cannot establish a prima facie case of discrimination as to this incident.  Because there is

7   no evidence, the court cannot find a triable issue as to whether any notice constituted an

8   adverse action, nor can the court find a triable issue as to any discriminatory motive or

9   evidence that other similarly situated employees were treated more favorably.

10          The fifth adverse action alleged by plaintiff Lam is a November 2010 written notice

11   for leaving his post.  In the complaint, plaintiff Lam alleges that he "smelled a strong odor

12   of sewage" that was "so foul that some CCSF employees even refused to report to their

13   posts or requested to leave early in order to avoid exposure to toxic fumes."  TAC, ¶ 43.

14   Plaintiff Lam alleges that he "made a complaint to his union and asked the union official

15   to report the condition to CAL-OSHA."  Id.  Lam then alleges that he was "issued a written

16   reprimand" for "alleged tardiness that day in reporting to his assigned post."  Id.

17   However, Lam maintains that "he was not tardy to his post," and further alleges that

18   "several non-APA employees who were tardy or left early that day did not suffer any

19   negative consequences, including Thomasson, Bill, Smith, Sullivan, Burns, and Nelson."

20   Id.

21          Defendant CCSF makes a number of arguments in response.  First, it suggests

22   that the written notice was not actually an adverse action, because it "is not disciplinary in

23   nature" and carries "no tangible consequences."  However, the court is unconvinced by

24   this argument.  The fact that CCSF creates a written record of the notice (even if it was a

25   non-disciplinary "record of discussion" rather than a disciplinary "reprimand") suggests

26   that there could be some consequences – otherwise there would be no reason for CCSF

27   to document the discussion.

28          However, plaintiff Lam does fail to establish a different element of a prima facie

United States District Court
Northern District of California

16

1    discrimination case – namely, whether defendant acted with a discriminatory motive, or

2    evidence that other similarly situated employees were treated more favorably.  While

3    plaintiff Lam does provide names of employees who were allegedly treated more

4    favorably, more than mere names are required at this point in the case.  In order to avoid

5    summary judgment, plaintiff Lam must provide evidence that other employees were

6    treated more favorably – for instance, testimony from other employees supporting Lam's

7    allegations.  Because no such evidence has been provided, the court finds that plaintiff

8    Lam has failed to establish a prima facie case of discrimination as to the November 2010

9    written notice.

10         Plaintiffs do submit a chart purporting to show "steps of progressive disciplinary

11   action taken by SFJPD."  See Dkt. 185, Ex. 4.  The chart categorizes various employees

12   by race, and then lists the alleged conduct that they participated in and the disciplinary

13   action that they received.  While this chart demonstrates that plaintiffs are attempting to

14   meet their burden to show that APAs were disciplined more harshly than their non-APA

15   counterparts, it falls short in a number of ways.  First, and most importantly, the chart

16   does not allow for an apples-to-apples comparison of similarly situated employees.

17   Instead, the chart simply lists 97 incidents of disciplinary action, without any attempt to

18   show that employees who engaged in similar conduct were disciplined differently.  The

19   second, related shortcoming of the chart is that it does not tie the listed incidents to the

20   alleged adverse actions that plaintiffs suffered.  In other words, for this chart to meet

21   plaintiffs' evidentiary burden, it would need to highlight incidents where non-APA

22   employees engaged in the same conduct as did plaintiffs, but were disciplined less

23   harshly.  Third and finally, the chart contains no references to underlying evidence (such

24   as disciplinary records and/or employee testimony), nor was the chart attached to a

25   declaration of a person attesting to have personal knowledge of the matters described.

26   Overall, the court finds that these deficiencies prevent the chart from serving as the type

27   of evidence that would meet plaintiffs' burden as to the fourth prong of a prima facie

28   discrimination case for this and any other alleged adverse action.

1    Even if plaintiff Lam were able to establish a prima facie case of discrimination

2  based on the November 2010 written notice, defendant CCSF has presented a

3  legitimate, non-discriminatory reason for the notice.  Specifically, CCSF argues that JPD

4  has a policy requiring employees to arrive to work on time, and to promptly report to their

5  assigned work post and relieve the employee working on that assignment before them.  If

6  an employee does not promptly relieve the previous employee, that previous employee

7  may be required to incur overtime while he waits.  Indeed, CCSF presents evidence that

8  one of its employees incurred overtime on November 9, 2010, with the reason for the

9  overtime requested listed as "Lam relieved late."  See Dkt. 178-5, ¶ 13.

10    Plaintiff Lam does not challenge the truth of CCSF's proffered legitimate non-

11  discriminatory reason, but instead argues that "[w]hen it comes to budgets and overtime

12  provisioning, these types of 'reminders' are far from friendly," and that "[t]he monetary

13  aspect alone is sufficient to make CCSF's action against Lam an adverse employment

14  action."  Dkt. 182 at 10.  Lam further argues that "[m]anagement looks poorly upon

15  employees who create or abuse overtime because it makes their 'bottom line' less

16  impressive."  Id.

17    While plaintiff Lam may take issue with CCSF's focus on the "bottom line," his

18  arguments actually support the proposition that CCSF was motivated by financial

19  reasons, rather than discriminatory reasons.  For that reason, plaintiff Lam has not

20  presented evidence that would create an inference that CCSF's stated reasons for the

21  November 2010 written notice were "merely a pretext for discrimination," and thus, the

22  court finds that the incident is not actionable as part of plaintiff Lam's Title VII

23  discrimination claim.

24    The sixth adverse action alleged by plaintiff Lam relates to his workers'

25  compensation claim filed in January 2011 based on the irritation of his eye.  In the

26  complaint, he alleges that he "submitted a valid medical advisory" that recommended

27  "modified duty due to persistent eye irritation."  TAC, ¶ 44.  Specifically, plaintiff Lam

28  alleges that he needed accommodation with respect to only one out of 20 available posts

United States District Court
Northern District of California

1   – the central control, which entailed "prolonged exposure to flashing security panel lights

2   and multiple monitors."  Id.  However, Lam alleges that he was "arbitrarily denied

3   accommodation," even as "other non-APA employees have been accommodated even

4   for light duty."  Id.  Lam further alleges that he was "refused work and sent home without

5   cause or justification" between January 15, 2011 and January 23, 2011, and that those

6   absences were taken out of his sick days.  Id., ¶ 45.

7       In its motion, defendant CCSF argues that there was no adverse action, because

8   placing Lam on a nine-day medical leave did not materially change the terms and

9   conditions of his employment.  CCSF also explains that it is JPD's practice to pay

10  employees out of sick leave while their workers' compensation claims are pending.  If and

11  when coverage is granted, the sick leave is replenished.  CCSF further points out that

12  plaintiff Lam originally filed a workers' compensation claim, then voluntarily withdrew it.

13      Defendant CCSF also points out that, after plaintiff Lam returned to work on

14  January 24, 2011, his only medical restriction was to take a 15-minute break every two

15  hours, which was already provided to all JPD employees.  JPD informed plaintiff Lam that

16  he could make a reasonable accommodation request if he wished, but he chose not to,

17  finding that it "wasn't necessary" since he was already being provided with a break every

18  two hours.

19       The court finds that plaintiff Lam has not been entirely clear about what

20  constituted the alleged adverse action – whether it was the denial of his requested

21  accommodation, or the use of his sick days to cover the missed workdays, or both.  In his

22  opposition, plaintiff Lam appears to offer a new theory of what constituted the adverse

23  action, arguing that "CCSF fails to acknowledge that they put Lam right back in the same

24  environment that caused his eye irritation in the first place," and that "[t]o the reasonable

25  person, it would appear that CCSF JPD was trying to exacerbate Lam's injuries without

26  regard to any consequences it may have had to Lam's future physical and mental health."

27  Dkt. 182 at 10.

28       The court will address each of these possible adverse actions in turn.  First, to the

United States District Court
Northern District of California

1   extent plaintiff Lam alleged that he suffered an adverse action when he was "arbitrarily

2   denied accommodation," he has not provided sufficient allegations – let alone evidence –

3   for the court to determine whether such denial actually was an adverse action.

4   Specifically, plaintiff Lam does not make clear what specific accommodation he

5   requested.  Moreover, defendant CCSF correctly argues that an employee is not entitled

6   to pick his own form of accommodation.  See, e.g., Queen v. Hard Rock Hotel and

7   Casino, 2011 WL 6753011 (D. Nev. Dec. 22, 2011).  However, even if this was an

8   adverse action, plaintiff Lam has not provided evidence that other similarly situated

9   employees were treated more favorably.  To be clear, the complaint alleges that to be the

10  case, and even provides names of specific employees whose accommodations were

11  provided, but at this stage of the case, plaintiff needs more than allegations – he needs

12  evidence.  Finally, even if plaintiff Lam could establish a prima facie case of

13  discrimination as to the alleged denial of accommodation, defendant CCSF provides a

14  declaration stating that JPD's staffing needs made temporary assignment to another post

15  impracticable, necessitating that plaintiff Lam be sent home if he was unable to work at

16  his assigned station.  Dkt. 178-5, ¶ 10.  Plaintiff Lam has not provided evidence showing

17  that CCSF's stated legitimate, non-discriminatory reason was merely a pretext for

18  discrimination.  Accordingly, the alleged denial of accommodation is not actionable.

19          Second, to the extent that plaintiff Lam claims that the use of his sick days was an

20  adverse action, the argument fails because Lam was given the option of filing a workers'

21  compensation claim, which he did, and then voluntarily withdrew.  Thus, the use of

22  plaintiff Lam's sick days was the result of his own actions, not any adverse action on the

23  part of CCSF.  Moreover, plaintiff Lam does not allege (let alone provide evidence) that

24  other similarly situated employees were treated differently with regard to the use of sick

25  days for medical leave.  Thus, plaintiff Lam cannot establish a prima facie case of

26  discrimination with respect to the use of his sick days.  Finally, as before, defendant

27  CCSF has provided a legitimate, non-discriminatory reason for the use of sick days,

28  pointing to a JPD policy of using sick days while a workers' compensation claim is

1  pending.  Plaintiff Lam has not provided any basis for finding that stated reason to be a

2  pretext for discrimination, and thus, the use of plaintiff Lam's sick days is not actionable.

3        Third, to the extent that plaintiff Lam alleges that his placement back in the same

4  work post was an adverse action, the court first notes that this theory was not pled in any

5  of the complaints filed in this case.  Moreover, the fact that plaintiff Lam specifically chose

6  not to make a further request for accommodation because it "wasn't necessary" now

7  precludes him from arguing that the placement was an adverse action.  Accordingly, the

8  court finds that plaintiff Lam's reassignment to his work post after returning from medical

9  leave is not actionable.

10        Overall, for the above reasons, the court finds that none of the events surrounding

11  plaintiff Lam's medical restrictions and medical leave are actionable as part of his Title VII

12  discrimination claim.

13        The seventh adverse action alleged by plaintiff Lam is that "[o]n or about January

14  27, 2011, Lam was denied participation in a scheduled annual shift bidding process

15  without justification or cause."  TAC, ¶ 46.

16        In its motion, defendant CCSF argues that the shift bid was indeed originally

17  scheduled for January 27, 2011, but did not actually occur until April 7, 2011, at which

18  time plaintiff Lam actually did participate.  However, if it had occurred in January, CCSF

19  concedes that plaintiff Lam would not have been eligible, because in order to be eligible

20  for a shift bid, an employee must be medically cleared to work at least seven days prior to

21  the bid.  Because, as discussed above, plaintiff Lam was on medical leave through

22  January 23, 2011, he was not eligible to participate in a shift bid on January 27, 2011.

23        In his opposition, plaintiff Lam admits that he participated in the April 2011 shift

24  bid, but claims that CCSF "does not acknowledge the hurdles they presented to Lam in

25  making this participation," nor does it "discuss the shift bid processes prior to and

26  subsequent to the April 2011 shift bid."  While plaintiff Lam may be correct on those

27  points, they are irrelevant to determining whether he suffered an adverse action by being

28  "denied participation" in the January 2011 shift bid.  And because plaintiff Lam actually

United States District Court
Northern District of California

did participate in the rescheduled shift bid, the court finds no triable issue as to whether plaintiff Lam suffered an adverse action.  The court also notes that plaintiff Lam has presented no evidence of a discriminatory motive or of other similarly situated employees being treated more favorably.  Thus, the shift bid-related allegations are not actionable as part of plaintiff Lam's Title VII discrimination claim.

The eighth adverse action alleged by plaintiff Lam is that "[o]n or about May 14, 2011, Lam was given a written reprimand and placed on 'sick leave restriction' without justification and merit."  TAC, ¶ 47.

In its motion, defendant CCSF explains that employees are given 12 sick days for every rolling one-year period, and after those days are used, employees must provide a doctor's note after returning to work.  JPD's policy was to issue a written notice of placement on "sick leave restriction," but such notice did not constitute a disciplinary action.

Defendant CCSF then acknowledges that plaintiff Lam was placed on sick leave restriction in May 2011, and points out that many of the 12 sick days already used by Lam were the result of his January 2011 medical leave.  As mentioned above, Lam chose not to pursue his workers' compensation claim, and as a result, his sick days were never replenished.

The court previously found that "the use of plaintiff Lam's sick days was the result of his own actions, not any adverse action on the part of CCSF," and the same rationale applies here.  Lam's placement on sick leave was the result of his own decision not to pursue his workers' compensation claim, and thus cannot constitute an adverse action. Moreover, plaintiff Lam has not provided evidence of a discriminatory motive or of other similarly situated employees being treated more favorably, so he has failed to establish a prima facie case of discrimination.  Finally, even if he was able to establish a prima facie case, defendant CCSF has presented a legitimate, non-discriminatory reason for the sick leave restriction, presenting evidence that this was a department-wide policy used to monitor and manage sick leave abuse.  Plaintiff Lam has not provided any reason to

1   believe that the policy was a pretext for discrimination, and thus, the court finds that the

2   May 2011 sick leave restriction is not actionable as part of plaintiff Lam's Title VII

3   discrimination claim.

4          Having addressed all of the adverse actions alleged as part of plaintiff Lam's third

5   cause of action for discrimination under Title VII, and having found none of them to be

6   actionable, the finds that defendants' motion for summary judgment must be GRANTED

7   as to the third cause of action as asserted by plaintiff Lam.

8          Turning to plaintiff Leiato's claims, her first alleged adverse action is similar to

9   plaintiff Lam's – she alleges that "[o]n or around March 2010, Leiato was denied

10  promotion despite nearly fifteen (15) years of experience, likely due to her race, gender,

11  national origin, and previous complaints against JPD and CCSF."  TAC, ¶ 67.  And like

12  plaintiff Lam, Leiato also alleges that "[t]hroughout her career at the JPD, Leiato

13  repeatedly and continually asked to be assigned to acting supervisory positions," and

14  specifically points to instances in March 2010, September or October 2011, December

15  2011, January 2012, and February 2012 when she asked to be appointed to such a

16  position.  Id., ¶¶ 72-80.

17         The analysis for plaintiff Leiato's "failure to promote" allegations is similar to that

18  for plaintiff's Lam's "failure to promote" allegations, as set forth above.  With respect to

19  the March 2010 promotions, plaintiff Leiato appears not to challenge the fact that she did

20  not actually apply for the promotion or take the job-related examination, instead arguing

21  that "it was generally known throughout the Department that Lam and Leiato did inquire

22  several times about being considered for any promotions," and that "neither plaintiff ever

23  was made apprised of the process and no one was willing to guide them through

24  whatever corporate 'hoops' the plaintiffs had to jump through to be considered for

25  promotion."  Dkt. 182 at 8.

26         Even if plaintiff Leiato is correct that her supervisors did not help her apply for a

27  promotion, the fact remains that she did not apply, and thus was ineligible for a promotion

28  in March 2010.  This fact alone precludes plaintiff Leiato from establishing a prima facie

United States District Court
Northern District of California

case of discrimination as to the March 2010 promotion.  See, e.g., Ratti v. City and County of San Francisco, 1992 WL 281386 (N.D. Cal. 1992) ("[A]pplication to the positon is a necessary element of raising a claim for discrimination by disparate treatment.").  For that reason, plaintiff Leiato has not shown that she suffered an adverse action by not receiving a promotion in March 2010.  Moreover, plaintiff Leiato has not shown that defendant acted with a discriminatory motive, or that other similarly situated employees were treated more favorably.  For those reasons, the court finds that any alleged denial of promotion in March 2010 is not actionable as part of plaintiff Leiato's Title VII discrimination claim.

However, like plaintiff Lam, plaintiff Leiato also alleges that she was denied an acting supervisory position.  And as the court found with respect to plaintiff Lam, because there is no evidence of the procedure for requesting appointments to acting supervisory positions, the court finds that plaintiff Leiato has raised at least a triable issue as to whether she suffered an adverse action when she was denied an appointment to an acting supervisory position.

However, in order to establish a prima facie case of discrimination, plaintiff Leiato must also present evidence that other employees with qualifications similar to her own were treated more favorably, or that the employer had a discriminatory motive.  In the complaint, plaintiff Leiato does allege that plaintiff's "non-APA counterparts received the additional pay and opportunities for promotion requested by plaintiff," but at this stage of the case, more than mere allegations are required.  Plaintiff Leiato must provide evidence showing that similarly situated non-APA employees were in fact treated more favorably.

As mentioned above, in the opposition brief, plaintiffs provide more specifics, but they relate only to the promotion to permanent positions, not to the appointment to acting positions.  See Dkt. 182 at 3.  And as also mentioned above, defendant CCSF presents evidence that two Asian-Americans (Dennis Woo and Scott Kato) were appointed to acting positions during the relevant time period.  See Dkt. 187-1, Ex. C at 238:11-19, 247:11-13; see also Dkt. 178-5, ¶ 25.

1    Based on plaintiff Leiato's lack of evidence that defendant CCSF acted with a

2    discriminatory motive in failing to appoint her to an acting supervisory position or other

3    evidence that similarly situated employees were treated more favorably, and based on

4    CCSF's evidence that two Asian-American employees were in fact appointed to acting

5    positions, the court finds that plaintiff Leiato has not established a prima facie case of

6    discrimination as to the failure to appoint her to an acting supervisory position.

7    However, even if plaintiff Leiato were able to establish a prima facie case,

8    defendant CCSF has presented a legitimate, non-discriminatory reason for any alleged

9    adverse action – namely, that more qualified candidates would have been appointed over

10   her.  See Dkt. 178-5, ¶ 36.  The JPD director (Toni Ratcliff-Powell) acknowledges that

11   plaintiff Leiato had been told that she could be recommended for an acting position "if she

12   were able to remedy her chronic absenteeism and excessive use of sick leave, as well as

13   avoid altercations that led to disciplinary issues," but that "Leiato did not rectify such

14   issues during [Ratcliff-Powell's] tenure as director."  Id.  Moreover, Ratcliff-Powell states

15   that, even if Leiato had been able to rectify those issues, other candidates were still more

16   qualified because "they did not have performance problems similar to Leiato's," such as

17   her "refus[al] to work in certain parts of her assigned unit," her refusal to conduct room

18   searches, and the fact that she was on sick leave restriction during Ratcliff-Powell's entire

19   tenure from 2008 through 2013.  Id.

20   In the opposition brief, plaintiff Leiato argues that "CCSF's 'blanket' statement that

21   there were more qualified candidates is quite nebulous because they fail to indicate

22   whom is more qualified."  Dkt. 182 at 14.  The court agrees that, if CCSF had merely

23   stated that there were more qualified candidates, that would be too "nebulous" to

24   constitute a legitimate, non-discriminatory reason.  However, CCSF provided a

25   declaration setting forth specific performance issues, and plaintiff Leiato does not provide

26   evidence showing that the stated performance issues were not factually accurate, or that

27   they were offered as a pretext for discrimination.

28   For all of the above reasons, the court finds that any alleged denial of appointment

United States District Court
Northern District of California

1   of plaintiff Leiato to an acting supervisory positon is not actionable as part of her Title VII

2   discrimination claim.

3   The second adverse action alleged by plaintiff Leiato is that "[o]n or around

4   November 2010, Leiato submitted competent medical certification to request leave for a

5   doctor's appointment," but was "arbitrarily denied leave and pay and thereafter charged

6   with 'misuse of sick time' and being AWOL for her November 24, 2010 medical

7   appointment that she notified her supervisors of."  TAC, ¶ 70.

8   Interestingly, in its motion, defendant CCSF does not challenge plaintiff Leiato's

9   failure to establish a prima facie case of discrimination, even though it appears that

10   Leiato has failed to provide evidence of a discriminatory motive, or of similarly situated

11   employees being treated more favorably.  Because CCSF did not raise the issue, the

12   court will not rely on the apparent failure to establish a prima facie case, and will instead

13   evaluate CCSF's proffered legitimate, non-discriminatory reason for denying Leiato leave.

14   In its motion, CCSF points out that the day for which Leiato requested leave was

15   the day before Thanksgiving, a day that "many others had already asked for and obtained

16   approval for vacation," such that "the Hall could not absorb any more absences."  See

17   Dkt. 178-5, ¶ 27.  Moreover, CCSF also attaches contemporaneous notes from Leitao's

18   supervisor which shows that the denial of leave was conditional, and that Leiato could

19   have had the day off if she "provided proof of medical necessity" in advance, which she

20   did not do.  Dkt. 178-5, Ex. 18.  When Leiato ultimately did not come to work on

21   November 24, she was issued a written reprimand. Dkt. 178-5, ¶ 29.

22   Plaintiff Leiato does not appear to address this proffered legitimate, non-

23   discriminatory reason in her opposition brief.  In fact, it appears that the November 2010

24   denial of leave is not mentioned at all.  Leiato does mention one instance where she

25   "took a day off without approval," but she states that she needed the day off for a "family

26   event," which suggests that it is referring to the July 2010 denial of leave that was already

27   alleged in Lam I (and thus barred from this suit under principles of res judicata).  Thus, in

28   the absence of any evidence that undermines CCSF's stated reason for the discipline,

United States District Court
Northern District of California

26

1   the court finds that the denial of plaintiff Leiato's request for leave in November 2010 is

2   not actionable as part of her Title VII discrimination claim.

3         The third adverse action alleged by Leiato is that she has "routinely been assigned

4   to work with two on-call staff, where the common practice is 2:1 permanent to on-call

5   ratio."  TAC, ¶ 70.  Leiato alleges that "[t]his work assignment makes it harder to perform

6   her job responsibilities, prolonging the time it takes and putting her in danger."  Id.

7         In its motion, defendant CCSF notes that, at her deposition, plaintiff Leiato could

8   not provide information about any specific incidents when she was assigned to work with

9   on-call staff, nor could she state when the alleged incidents occurred.  CCSF also points

10  out that the court addressed an identical allegation in Lam I, and while they were alleged

11  in the context of a harassment claim (rather than a discrimination claim), the court

12  ultimately held that "[n]either [Leiato's] assignment to work with two newly hired on-call

13  counselors, nor the refusal of Leiato's request to leave work two hours early, constitute

14  any material change or alteration in the terms of plaintiff's employment, such that an

15  adverse employment action has been stated."  Lam I, 868 F.Supp.2d 928, 950 (N.D. Cal.

16  2012).  The court's previous finding applies with equal force here, and thus, plaintiff

17  Leiato is unable to establish a prima facie case of discrimination.  Moreover, plaintiff

18  Leiato's inability to provide dates on which she was assigned to work with on-call staff

19  prevents the court from being able to make a determination as to whether this allegation

20  is barred by res judicata.  For all of those reasons, the court finds that any allegations

21  regarding plaintiff Leiato's alleged assignment to work with on-call staff are not actionable

22  as part of her Title VII discrimination claim.

23        Having addressed all of the adverse actions alleged as part of plaintiff Lam's third

24  cause of action for discrimination under Title VII, and having found none of them to be

25  actionable, the finds that defendants' motion for summary judgment must be GRANTED

26  as to the third cause of action as asserted by plaintiff Leiato.

27        Turning back to the first and second causes of action, brought under section 1983

28  and 1981 respectively.  In Lam I, the court noted that "when analyzing claims of disparate

United States District Court
Northern District of California

treatment in employment under § 1981 or § 1983, a district court is guided by Title VII analysis." Lam I, 868 F.Supp.2d at 951 (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 n. 1 (1993); Surrell v. California Water Serv. Co., 518 F.3d 1097, 1103, (9th Cir. 2008); Mustafa v. Clark County Sch. Dist., 157 F.3d 1169, 1180 (9th Cir.1998); Lowe v. City of Monrovia, 775 F.2d 998, 1010-11 (9th Cir. 1985)).

Starting with the section 1983 claim, the court extensively addressed this legal standard in Lam I:

> To state a claim under section 1983 for a violation of the Equal Protection Clause, a plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class," and that plaintiff was treated differently from persons similarly situated. See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998); Lee v. City of Los Angeles, 250 F.3d 668 (9th Cir. 2001); see also Washington v. Davis, 426 U.S. 229, 239-40 (1976). As the parties here note, a plaintiff may satisfy this showing by alleging four separate elements: (1) that the plaintiff was treated differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) the plaintiff suffered injury as a result of the discriminatory classification. See, e.g., Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979); see also T.A. ex rel. Amador v. McSwain Union Elementary Sch. Dist., 2009 WL 1748793 (E.D. Cal. 2009).

Lam I, 868 F.Supp.2d at 951.

The court's analysis in Lam I also applies with equal force in this case:

> Ultimately, the same deficiencies that preclude a finding that triable issues of material fact exist in connection with plaintiffs' Title VII claims, exist with respect to plaintiffs' section 1983 claim. Namely, and for all the reasons highlighted in connection with the court's discussion of plaintiffs' Title VII claims, plaintiffs' evidence fails to demonstrate that plaintiffs – each of them – were treated differently from others similarly situated, based on an impermissible classification. In other words, plaintiffs' evidence fails to raise a triable issue as to the existence of a discriminatory "purpose" in the actions taken by plaintiffs' JPD supervisors. As such, plaintiffs do not prevail in establishing a triable issue as to their section 1983 claims.

> Moreover, to establish municipal liability of the City under section 1983, plaintiffs must show: (1) that they possessed a constitutional right of which they were deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiffs' constitutional rights; and (4) that the policy is the moving force behind the constitutional violation.

United States District Court
Northern District of California

1

2

> Plumeau v. Sch. Dist. #40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997).  There can be no municipal liability without an underlying constitutional violation.  See Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).

3

4

5

> Here, because plaintiffs fail to establish the existence of triable issues with respect to any equal protection violation that underlies their section 1983 claims, they also fail to establish the first of the elements necessary for liability against the City – i.e., a "constitutional violation."

6

Lam I, 868 F.Supp.2d at 951-52.

7

8

Accordingly, the court finds that summary judgment must be GRANTED as to plaintiffs' first cause of action brought under section 1983.

9

10

11

12

13

14

15

16

17

Turning to the section 1981 claim, the Ninth Circuit has held that "[a]nalysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case," and that "[b]oth require proof of discriminatory treatment and the same set of facts can give rise to both claims."  Fonseca v. Sysco Food Services of Arizona, Inc., 374 F.3d 840, 850 (9th Cir. 2004).  Applying that standard, based on both plaintiffs' failure to establish a viable Title VII discrimination claim (including their specific failure to present evidence of discriminatory intent), the court finds that summary judgment must also be GRANTED as to both plaintiffs' second cause of action under section 1981.

18

19

20

21

22

23

24

25

26

27

28

Next, the court will address plaintiffs' fourth cause of action, for Title VII harassment and hostile work environment based on race and national origin.  To prevail on a hostile workplace claim premised on race, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment.  See Fuller v. City of Oakland, 47 F.3d 1522, 1527 (9th Cir.1995).  The more outrageous the conduct, the less frequent must it occur to make a workplace hostile.  See Ellison v. Brady, 924 F.2d 872, 878 (9th Cir.1991).  To determine whether conduct is sufficiently severe or pervasive to violate Title VII, the court looks at all surrounding circumstances, including frequency, severity, whether the alleged conduct is threatening or humiliating,

United States District Court
Northern District of California

1   or merely an offensive utterance, and whether it interferes with an employee's work

2   performance.  See, e.g., Vasquez v. City of Los Angeles, 349 F.3d 634, 649 (9th Cir.

3   2004).  Finally, the allegations of a racially hostile workplace must be assessed from the

4   perspective of a reasonable person belonging to the same racial or ethnic group as the

5   plaintiff.  See Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 116 (2002);

6   McGinest v. GTE Service Corp., 360 F.3d 1103, 1115 (9th Cir. 2004).

7         Both plaintiffs fail to present evidence regarding prongs (1) and (3) – namely, that

8   they were subjected to verbal or physical conduct of a racial nature, or that the conduct

9   was sufficiently severe or pervasive to alter the conditions of employment.  As mentioned

10   repeatedly throughout the discussion of plaintiffs' Title VII discrimination claim, plaintiffs

11   fail to present evidence that any conduct to which they were subjected was based on

12   their race or national origin.  Nor does the sporadic nature of the alleged conduct meet

13   the "severe or pervasive" standard required for a harassment claim.  Accordingly,

14   defendants' motion for summary judgment is GRANTED as to the fourth cause of action

15   for harassment and hostile work environment under Title VII.

16         Next, the court will address plaintiffs' fifth cause of action, for retaliation under Title

17   VII.  Generally, in order to make out a prima facie case of retaliation, a plaintiff must

18   establish "that [he or she] acted to protect [his or her] Title VII rights, that an adverse

19   employment action was thereafter taken against [him or her], and that a causal link exists

20   between those two events."  See Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465

21   (9th Cir.1994).

22         In the complaint, plaintiffs allege that they "have alleged instances of racial

23   discrimination in the workplace, reported these allegations to their superiors, and filed

24   relevant complaints with administrative agencies."  TAC, ¶ 128.  Plaintiffs further allege

25   that, as a result, "defendant subjected plaintiff to adverse employment actions, including

26   but not limited to harassment, reassignment, suspension and discharge," and that

27   "[t]hese adverse actions were meant to dissuade plaintiffs, or any other reasonable

28   employees from making or supporting charges of racial discrimination and were causally

1    connected to plaintiffs' protected activities and conduct." Id.

2         For the reasons discussed above, the court finds that plaintiffs have failed to raise

3    triable issues of fact as to whether they suffered an adverse action for the majority of their

4    allegations.  And even more importantly, plaintiffs have failed to establish a causal nexus

5    between any alleged protected activity and any specific adverse action that they allegedly

6    suffered.  For those reasons, defendants' motion for summary judgment must be

7    GRANTED as to the fifth cause of action.

8         Finally, plaintiffs' sixth cause of action is brought under California Government

9    Code § 12940 for failure to prevent unlawful discrimination and harassment.  Generally, it

10   is an unlawful employment practice under FEHA for an employer to "fail to take all

11   reasonable steps necessary to prevent discrimination and harassment from occurring."

12   See Trujillo v. North Co. Transit Distr., 63 Cal. App. 4th 280, 289 (1998).

13        California law under FEHA mirrors federal law under Title VII.  Thus, and since

14   plaintiffs have not established discrimination or harassment in the first instance – for the

15   foregoing reasons – plaintiffs' claim for failure to prevent or investigate such

16   discrimination, fails at the outset.  See Trujillo, 63 Cal. App. 4th at 289; Tritchler v. County

17   of Lake, 358 F.3d 1150, 1155 (9th Cir. 2004); Cook v. Lindsay Olive Growers, 911 F.2d

18   233 (9th Cir.1990) (citing Mixon v. FEHC, 192 Cal. App. 3d 1306 (1987) for the

19   proposition that Title VII law applies to FEHA claims).  Accordingly, defendants' motion

20   for summary judgment is GRANTED as to plaintiffs' sixth cause of action.

21                              **CONCLUSION**

22        Defendants' motion for summary judgment is GRANTED as to all of the claims

23   asserted by plaintiffs.  The Clerk is directed to close the file.

24        **IT IS SO ORDERED.**

25   Dated:  March 7, 2016

26   _____

27   PHYLLIS J. HAMILTON
     United States District Judge

28